| 7 | 489 |
| 55 | 397 |
| 7 | 489 |
| 57 | 362 |

## ANDREW CORRIGAN *v.* THE TRENTON DELAWARE FALLS CO.

"The Trenton Delaware Falls Company," on the 2d of April, 1833, made two mortgages to the Trenton Bank, for moneys borrowed; one for $4,000, and the other for $6,700; and on the 22d May, 1834, the Bank recovered a judgment against the Company for $6,000, other money loaned by the Bank. On the 1st October, 1835, there was due to the Bank for interest on the said mortgages and judgment $2,084 75. On that day the Company proposed to the Bank that if the Bank would make them a further loan, sufficient to pay said arrears of interest and a principal sum due to S. C., the Company would assign to the Bank, as security for the same, the rents reserved on certain perpetual leases of water made by the Company. The Bank accepted the proposition; and the Company made their note to the Bank for the $2,084 75, payable three days after date, for the said interest, and the Bank loaned to the Company the further sum of $3,504, and took the note of the Company therefor, payable three days after date; with which sum the Company paid to S. C. the said principal sum due him; and the Company executed to the Bank an assignment (so called by the parties,) of three perpetual leases of water power made by the Company to certain individuals at certain stipulated rents to be paid by the lessees to the Company. The Company afterwards became insolvent; and Receivers were appointed; and in Feb. 1844, by virtue of a decree of the Court and an act of the Legislature, the Receivers sold the property and chartered rights and privileges of the Company free and clear of all incumbrance. The Bank afterwards transferred the said leases to the petitioners, and all rents due and to grow due thereon, and assigned them the said note of $2,084 75.

*Held, first,* that the rent accruing on the said leases subsequent to the sale by the Receivers belonged to the purchaser at the Receivers' sale; that the so-called *assignment* of leases by the Company, the lessors, was a mere authority from the Company to the Bank to receive the rents; which ceased on the appointment of Receivers; and that it created no incumbrance on the property of the Company in the hands of the Receivers.

*Second,* that the rents accruing due after the appointment of the Receivers belonged to the Receivers, for the benefit of the creditors of the Company.

*Third,* that the rents which had become due before the appointment of the Receivers might be considered as appropriated to the purpose for which the Company authorized the Bank to receive them, though they remained unpaid by the lessees.

As a general rule, the taking of a note from a mortgagor or judgment debtor for interest due on the mortgage or judgment is not a payment of the interest if the note be not paid.

On the 22d Dec. 1846, "The Trenton Water Power Company" presented their petition, stating, that on the 16th Feb'y,

31

1831, an act of the Legislature was passed, entitled "An act to incorporate a company to create a water power at Trenton and its vicinity and for other purposes, by the name of ' The Trenton Delaware Falls Company.' "

That in the progress of the work of constructing the raceway &c., the said Falls Company, being embarrassed for want of funds, applied to Samuel Comley, of Philadelphia, for a loan of $3,500, to enable them to construct an aqueduct to carry the waters of the said raceway over the Assunpink Creek, for the supply of mills south of said Creek; and that thereupon an agreement was entered into between the said Falls Company and the said Comley, that Comley should loan the said Falls Company $3,500 for that purpose; and that Comley should, from and after the completion of the said aqueduct, supply a cotton factory situated on the south side of the said Creek, called the Hoy factory, in which Comley was interested, with 250 square inches of water from their raceway, equal to $750 per annum, at the rate at which they were leasing water, as a consideration for the said loan, and in lieu of interest, until they should repay the sum so borrowed.

That on the 2d April, 1833, the Falls Company made a mortgage to the Trenton Bank for $4,000 loaned to them by the Bank, and on the same day gave another mortgage to the said Bank for the further sum of $6,700 also loaned to them by said Bank; and on the 22d May, 1834, the said Bank recovered a judgment against the said Falls Company for the further sum of $6,000, for other money loaned by said Bank to said Company; which mortgages and judgment were liens upon all the real estate of the said Company, and the said judgment a lien upon the personal property also. And that, on the 1st Octorber, 1835, there was due to the said Bank for interest upon the said mortgages and judgment $2,084 75.

That the said Falls Company, being still embarrassed for money, and unable either to pay the arrears of interest due to the said Bank and for which the Bank was pressing them, or to pay said Comley the $3,500 so procured from him and for which they were furnishing him, in lieu of interest, with water equal,

at its market value, to more than 21 per cent. per annum, on the 1st Oct. 1835, applied to the said Bank for further assistance, and proposed, that if said Bank would make them a further loan sufficient to pay the arrears of interest then due the Bank and to pay the said debt due to Comley, they, the Falls Company, would assign to the Bank, as security for the same, the rents reserved upon certain perpetual leases of water held by said Falls Company, to wit, a lease to McKelway, a lease to S. & T. J. Stryker, and a lease to James Hoy, senior, the rent reserved on which last lease would become available by the payment of the said $3,500 so borrowed from Comley.

That ths Bank, deeming the security offered sufficient, acceded to the said proposal ; and, on the 1st Oct. 1835, loaned to the said Falls Company $2,087 ; and in consideration thereof the said Falls Company made and delivered to the Bank their note, of that date, for the said $2,087, payable to the said Bank three days after date ; with which said sum of money so borrowed the said Falls Company paid to the said Bank the interest so as aforesaid due them on the said mortgages and judgment; and, on the 28th Oct. 1835, the said Bank loaned to the said Falls Company the further sum of $3,504 ; and in consideration thereof the said Falls Company made and delivered to the said Bank their note, of that date, payable to the said Bank three days after date, for the said sum of $3,504; with which sum the said Falls Company paid to the said Comley the money so borrowed of him.

That in compliance with the terms of the proposition so made and accepted, and to secure the said debt to the Bank, in accordance therewith, the Falls Company, on the 27th Oct. 1835, executed to the said Bank, their successors and assigns, an absolute and unconditional assignment of the lease to McKelway, the rent fixed by which was $166 90, and the lease to the said Strykers, the rent fixed by which is $450 67 ; and, on the 11th Dec. 1835, made and executed to the said Bank, their successors and assigns, an absolute and unconditional assignment of the lease made to James Hoy, senior, the rent fixed by which is $750 ; which last mentioned rent had been made available by the said payment made to Comley.

The petitioners say they have been informed and believe, that the Falls Company never gave any other security to the Bank for the repayment of the said loan of $5,591 except the said leases so assigned as aforesaid; and that it was understood by and between the said Companies, at the time of the agreement for the said loan, that the rents received from the said leases so assigned as aforesaid should be applied to the payment of the interest growing due to the said Bank upon the loans previously made, and also to the interest growing due to the Bank on the said notes, so long as the Bank should be willing to continue the said several loans; and the Bank did so apply the same; yet that that arrangement, so far as it respected the application of a portion of the income from the said leases to the payment of the interest upon the previous loans, was only a matter of temporary accommodation to the said Falls Company, and for their exclusive benefit, and was to continue only so long as the Bank should be disposed so to apply the said rents; and was never intended to alter, vary or change the original agreement by which said leases were assigned as security for the payment of the said notes, or to restrain the Bank, at any time when they might deem it necessary for their own security to do so, from prosecuting their mortgage and judgment liens against said Falls Company to a recovery, and applying the income from said leases to the payment of the principal and interest due on the said notes; and that the Bank would not have made the last mentioned loan unless they had been secured by the said assigned leases the repayment of the principal as well as the interest of said notes.

That, the Falls Company having become insolvent, Philemon Dickerson, J. Ewing and Samuel S. Stryker were appointed Receivers; and that, on or about Feb. 20, 1844, by virtue of a decree of this court made Nov. 6, 1843, and an act of the Legislature passed Feb. 15, 1844, the said Receivers sold, at public sale, all the real estate and chartered rights and privileges of the said Falls Company, free and clear of all incumbrance; and that C. S. Olden became the purchaser at the said sale, for $50,000; and the said sale was subsequently confirmed by this court; and the said purchase money was thereupon paid to the

said Receivers, and a deed duly executed and delivered by them to the said Olden for the said property.

That the said Bank was largely interested with Olden in the said purchase, and advanced, as the petitioners are informed and believe, the purchase money for the same.

That J. M. Redmond, being desirous of becoming the owner of said property, proposed to Olden and the Bank, that upon the organizing a company under the name of "The Trenton Water Power Company," in conformity with the directions of the said act of the Legislature of Feb. 15, 1844, he would become the purchaser of the stock of the Company if they could agree upon the terms. That on the 1st of April, 1845, as the result of the negotiations that followed said proposition, an agreement was entered into between the said Olden, the said Bank and the said Redmond, that the said Olden and the Bank would at once proceed to organize the Company as aforesaid ; that Redmond should have the stock of said Company for $55,000, a certain mill and wharf belonging to the Bank for $7,500, and should also take the note of said Falls Company, of Oct. 1, 1835, for $2,087, and $3,000 of the principal of the note of said Falls Company, of Oct. 28,1835, at the sum of $5,851 96, being the amount of the principal sum of $5,087 and arrears of interest due thereon to the said 1st April, 1845 ; and that the Bank should assign to Redmond, or to such person or persons as he should direct, the said leases held by them as security for the said notes, with all the arrears of rent due upon the same.

That, on or about June 2, 1845, pursuant to the provisions of the said act of the Legislature, Olden and his associates organized themselves into a company under the name of "The Trenton Water Power Company," and thereupon the stock of said Company was duly transferred to the said Redmond, the title of said mill and wharf conveyed to him, and the said two notes assigned, the first in whole, and the second to the amount of $3000, to said Redmond ; in consideration of which, Redmond paid over to Olden and the Bank $25,810 59, in cash ; and the said Water Power Company executed to the Bank two mortgages, one for $13,000, the other for $30,000, on the property and works of

said Company, being the whole amount hereinbefore mentioned as agreed to be paid, and $458 63, interest on the purchase of the stock accrued before payment made.

That the said assignments of the said notes by the Bank to Redmond bear date April 1, 1845, that being the day when the agreement aforesaid was entered into ; but were in fact *written* on said notes, and said notes delivered to Redmond on the 2d of June, when the agreement was fully consummated ; and thereupon Redmond assigned and transfered the same to " The Trenton Water Power Company," who still hold the same.

That the interest was paid upon the said notes while the property of the Bank, up to Jan'y 1, 1843, and that the whole of the principal moneys mentioned in said notes, with interest thereon from that day, still remains due and unpaid, of which, all but the principal and interest of $500, reserved by the Bank, is due to the petitioners, the Trenton Water Power Company.

That on the 27th June, 1845, in further completion and fulfillment of the agreement and sale aforesaid, the Bank granted, bargained, sold, assigned, transferred and set over to the said Water Power Company, their successors and assigns, at the request of the said Redmond, the three before mentioned leases and all rents thereby reserved and all moneys due and to grow due thereon, and all the estate, right, title, interest, claim and demand whatever of the Bank of, in, to or out of the same, in as ample manner as the same were then held by the Bank, the said Water Power Company performing and fulfilling all the covenants in the said leases on the part of the Bank to be performed.

That at the time of the agreement of April 1, 1845, before mentioned, it was represented to Redmond by the Bank, and he believed and still does believe, there was an amount of arrears of rent due upon the said leases very nearly if not quite equal to the amount of the principal and interests of the said notes ; and that Redmond purchased said notes under the full belief that by the assignment to him, or to said Trenton Water Power Company, of the said leases and all the rents due upon the same, by the Bank, the Water Power Company would be enabled very nearly, if not wholly, to reimburse themselves to the amount of

said notes, by means of the said arrears of rent. And Redmond well knew at the time that the said Falls Company were utterly insolvent and unable to pay anything on the said notes.

The petitioners say that, soon after the assignment to them of the said leases, they had a settlement with S. S. & T. J. Stryker for arrears of rent so due on their lease, and received from them $850 in full thereof, which they have credited on the said note of $2,084; and that they were proceeding to collect the arrears of rent due on the lease to Hoy and McKelway when they were served by the receivers of the Falls Company with a copy of an interlocutory decree of this court directing the said receivers to proceed to collect from these petitioners, or from such person or persons as might be liable for the payment thereof, the rents reported by Jas. W. Wall, Esq., one of the masters of this court, to be due on said leases, so assigned, at the time of the said assignment, being for the term of three years and five months, from Jan'y 1, 1842, to June 2, 1845, and also $850 reported by the said master to have been received by these petitioners of the said Stryker, and also $500 due from Maynard and Hutchinson on said McKelway lease, without prejudice to the claims of the petitioners, Redmond, McKelway, or either of them; and that they, or either of them, be at liberty to apply to this court to have the validity of their respective claims to the said moneys settled according to the rules and practice of this court.

The petitioners insist that the Bank, as the holders of the said two notes of the Falls Company, and as assignees of said leases, holding under assignments made to secure the payments of said notes, as aforesaid, had a lien upon the arrears of rent so due on the said leases, on the 2d June, 1845, and had a right to receive said arrears and apply them to the payment of said notes; and that they had, therefore, a right to assign to these petitioners the said arrears of rent, with the said leases, to be applied, when collected, to the payment of said notes; and that, by virtue of the said assignments of the said notes and leases and rents and arrears of rent due thereon, made by the bank to the petitioners, the petitioners became entitled to the said arrears of rent; and that

they have a right, and ought *to* be permitted by this court to apply the arrears already received, and collect and apply the sums remaining due as aforesaid, to the payment of the amount due on said notes ; and that, if the said receivers have collected or shall collect any part of said arrears, the same ought by the order of this court to be directed to be paid over by them to these petitioners.

On the reading of this petition an order was made referring it to James W. Wall, master, to ascertain the truth of the allegations of the petitioners, and whether the petitioners are entitled to have the said arrears of rent due upon the said leases at the time of the assignment thereof to them by the Bank ; reserving all further equity until the coming in of the master's report.

On the 17th June, the report of Master Wall came in and was filed.

Testimony was taken before the master ; and he states that the matters referred to him were submitted by the counsel of the respective parties upon the testimony.

Exceptions were filed to the report by " The Trenton Water Power Company."

*S. G. Potts* and *P. D. Vroom*, in support of the exceptions.

*W. Halsted* contra.

THE CHANCELLOR.    The rent accruing subsequently to the sale by the receivers belongs to the purchaser.

The statute and the appointment of receivers under it is a conveyance or transfer of all the property of the insolvent company to the receivers, for the benefit of the creditors of the company, to be distributed in the mode pointed out by the statute ; that is, proportionally to the amount of their respective claims, except mortgage and judgment creditors, who have preference.

What is called the assignment of leases by the Falls Company, the lessors, to the Trenton Bank, was a mere authority or power of Attorney from the Company to the Bank to receive rent.

It ceased on the appointment of receivers. It created no incumbrance on the property of the Falls Company in the hands of the receivers.

The rents accruing due after the appointment of the receivers belonged to the receivers, for the benefit of the creditors.

The Bank mortgages and judgment were liens for both principal and interest, and the property sold for more than sufficient to pay the mortgages and judgment, principal and interest.

The ground not covered by the foregoing propositions is this : At the time of the appointment of the receivers five quarters rent had become payable on these leases.

So far as the rents had become due before the appointment of the receivers, they may be considered as appropriated to the purposes for which the Falls Company had authorized the Bank to receive them, though they remained unpaid.

The question arises, to what extent should the purposes for which the Bank were authorized to receive the rents require the application of the rents which had become payable before the appointment of the receivers ?

If the Bank were authorized to apply these rents towards the payment of the principal of the two notes, then the whole amount of the five quarters rent which had become payable before the appointment of the receivers is absorbed by application to such payment.

If those rents are applicable only to the payment of the interest on those two notes, and the interest on those two notes had been paid up to Jan'y 1, 1842, then, only so much of those rents would be payable to the Bank as would pay the interest on those two notes from Jan'y 1, 1842, to the time of the appointment of the receivers, which, I think, was in May, 1843.

This would raise the question, whether the rents on those leases were, by the agreement between the Falls Company and the Bank when the leases were assigned to the Bank, applicable to the payment of the principal as well as of the interest of these notes.

But, passing this question for the present; another view presents itself. The note of $2,084 was given by the Falls Company to the Bank for interest accrued due to the Bank on their

mortgages and judgment. Was the amount of that note credited by the Bank on their mortgages and judgment? and did the Bank receive from the receivers, in payment of their mortgages and judgment, only the amount thereof less the amount of this note of $2,084? If the amount of this note for $2,084 was deducted from the amount due the Bank on their mortgages and judgment, and if, as I suppose, the interest due and in arrear on their mortgages and judgment was more than the amount of that note, then, the question will be, did the Bank taking this note for the interest on their mortgage and judgment and giving credit for the amount thereof on the mortgages and judgment pay that interest in such way that if the note was not paid the security which the mortgages and judgment afforded for that interest was lost?

As a general rule, the taking of a note from a mortgagor or judgment debtor for interest due on a mortgage or judgment is not a payment of the interest if the note be not paid. The note, in this instance, not being paid, if the Bank received from the receivers only the amount of their mortgages and judgment after deducting therefrom the amount of this note, then, the Bank have not received the amount of interest which had become payable on their mortgages and judgment, but $2,084 short of it; and the note for this sum remaining unpaid, the Bank should still receive the full amount of the interest upon their mortgages and judgment, unless there is something in the shape which the Bank gave to the transaction in reference to this note for interest which should deprive them of the right they would otherwise have had. The shape the transaction took was this : The Bank took a note for the interest; and instead of crediting, or saying by way of credit on their mortgages and judgment, that they had received a note for the interest, they entered the note on their Bank books as discounted, and gave credit to the Falls Company on their Bank books for the proceeds of the note, and, I presume, charged the Falls Company with the amount of interest due on their mortgages and judgment. Whether any credit was entered on the mortgages and judgment of interest received, and how that credit was made, does not, I think, appear from the papers before me. Should the fact that this shape was given to the transaction put

the Bank in any worse condition than if they had simply taken a note for the interest, and held it, without passing it through their Bank books in the form of a discount ? If it should not, then the Bank may still be entitled to the amount of rents on those leases which were due and unpaid at the time of the appointment of the receivers, on account of the interest due on their mortgages and judgment at the time they took the note of $2,084; and if they are, it will absorb the whole amount of such rents.

I desire to be informed whether, in the settlement between the Bank and the receivers as to the amount due the Bank on their mortgages and judgment the Bank, credited this note of $2,084, or the amount thereof, as paid on their mortgages and judgment, and received, in full, so much less.

It is said that Redmond or The Water Power Company paid these notes ; and that therefore the rents pledged were released. I do not see it in this light. The Falls Company did not pay them. The Bank could assign them, and with them whatever security they had for their payment.

For the present it will be ordered, that so much of the rents on these leases as accrued between the time of the appointment of the receivers and the time of the sale by the receivers be paid to the receivers.

If the Bank received from the receivers the whole amount of their mortgages and judgment, principal and interest, giving no credit for the $2,084 note, then, this note has been paid; for it was given for interest on the mortgages and judgment; and the question will be, whether the rents due at the time of the appointment of the receivers are applicable to the payment of the principal and interest of the note for $3,500, or only the interest of that note.